## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

DORENE DISANTO; KAREN LAWSON;
MARGARET CARTWRIGHT; STATE OF
OHIO; and MIKE DEWINE,

        Plaintiffs,

    v.

THOMAS L. THOMAS,

        Defendant.

CIVIL ACTION NO.: 5:15-cv-36

## <u>ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Defendant Thomas L. Thomas ("Thomas"), a resident of Brantley County, Georgia, filed a Notice of Removal in this Court pursuant to 28 U.S.C. § 1441, *et seq.*, 28 U.S.C. §§ 1331 and 1332, and 25 U.S.C. § 1901, *et seq.*, on May 26, 2015. (Doc. 1.) Karen Lawson, a judge with the Lake County, Ohio, Juvenile Court, and Margaret Cartwright, a support officer with the Lake County, Ohio, Department of Job and Family Services, Child Support Enforcement Division, filed a Motion for Remand on June 23, 2015. (Doc. 12.) Thomas filed a Response, and Lawson and Cartwright filed a Reply. (Docs. 21, 23.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Lawson and Cartwright's Motion, **REMAND** this case to the Lake County, Ohio, Court of Common Pleas, and **CLOSE** this case. For these same reasons, I **RECOMMEND** the Court **DISMISS** Thomas' Motions for Default Judgment, Motions to Amend/Correct, Motions to Strike, and Motion for Immediate Consideration, (docs. 13, 17, 20, 22, 24, 26, 27, 30), as moot.[1]

---

[1] Documents Numbered 24 and 26 are the same pleadings. However, since the Clerk of Court has docketed these pleadings separately, the Court will consider these pleadings to be separate documents. In

# BACKGROUND

In December 2014, Dorene DiSanto ("DiSanto") requested the assistance of the Lake Court, Ohio Department of Job and Family Services, Child Support Division ("Lake County DJFS") to establish paternity for her minor child, who was born in 2003. The Lake County DJFS notified Thomas, the minor child's alleged father, of DiSanto's request to establish paternity on February 12, 2015. (Doc. 12-2, p. 1.) By this same document, Thomas was ordered to appear for genetic testing at LabCorp in Brunswick, Georgia, on March 17, 2015. (Id. at p. 2.) Thomas failed to submit to genetic testing, and the Lake County DJFS determined paternity was inconclusive as a result of Thomas' failure to submit to genetic testing. (Id. at pp. 5–6.)

Thomas then initiated suit against DiSanto in the Brantley County, Georgia, Superior Court on March 18, 2015, for child custody, child support, and show cause. According to Thomas, DiSanto's request to establish paternity of her minor child with the Lake County DJFS was "fraudulently/falsely filed[.]" (Doc. 12-3, p. 2.) Thomas asserted the Brantley County Superior Court had "absolute/exclusive Subject Matter Jurisdiction" over his case. (Id.) DiSanto filed an answer to Thomas' complaint, as well as a motion to dismiss, on April 27, 2015. In her motion to dismiss, DiSanto alleged she and the minor child reside in Ohio, Thomas has not been determined to be the minor child's father, and she and Thomas were never married. (Id. at p. 11.) The Brantley County Superior Court determined Thomas and DiSanto were never married and that Ohio is the home state for purposes of a custody determination and dismissed Thomas' complaint on June 4, 2015. (Doc. 31-2.)

On April 23, 2015, DiSanto filed a custody/emergency ex parte complaint in the Court of Common Pleas in Lake County, Ohio, against Thomas, Case Number 2015CV00603. DiSanto

---

addition, Documents Numbered 19 and 20 are the same pleadings, yet only Document Number 20 is docketed as a pending Motion.

stated she and the minor child had been living in Ohio since April 2013, and she feared Thomas would attempt to take the minor child to Georgia without her knowledge or permission. DiSanto's request for ex parte relief was granted by Karen Lawson, a Lake County Juvenile Court Magistrate Judge and a named "Plaintiff" in this cause of action. (Doc. 12-4, p. 9.)

Thomas, in turn, filed a complaint/counter-complaint for custody, visitation, child support, objection to DNA testing, and habeas corpus of child in the Court of Common Pleas in Lake County, Ohio, Juvenile Division on May 18, 2015, Case Number 2015-P-0028. In that complaint, Thomas stated that he is not the minor child's biological father, but he raised the minor child as a father would. Thomas also stated the Lake County court lacked jurisdiction over him and the minor child because they are both registered members of the Penbina Nation Little Shell of North America, and exclusive subject matter jurisdiction rests with the "Tribal Court, Federal Courts, and/or will be Transferred to the US District Court over Federal Questions of Law[.]" (Doc. 12-4, p. 17.)

Thomas filed the Notice of Removal of the pending Lake County, Ohio, case (Number 2015-CV-00603), in this Court on May 26, 2015. (Doc. 1.) In addition to DiSanto, Lawson, and Cartwright, Thomas names the State of Ohio and Mike DeWine, the Ohio Attorney General, as Plaintiffs-Respondents in his Notice. As stated above, Thomas bases his Notice on 28 U.S.C. § 1441, *et seq.*, 28 U.S.C. §§ 1331 and 1332, and 25 U.S.C. § 1901, *et seq.*, and claims this Court has jurisdiction over this matter based on these statutes. (Id. at p. 2.) Specifically, Thomas avers this Court "retains exclusive Subject Matter Jurisdiction over Native-American Child and over State Courts currently acting without Subject Matter Jurisdiction to enforce Tribal law[.]" (Id.) Thomas maintains he "possesses the Right to file a Federal Notice of Removal against Plaintiff-

Respondent(s) et at [sic] for blatantly violating [his] clearly established Federal Civil Rights, Federal Statutes/Laws[.]" (<u>Id.</u> at p. 3.)

**DISCUSSION**

Lawson and Cartwright move for the remand of this matter to the Court of Common Pleas in Lake County, Ohio, contending this cause of action was improperly removed to this Court. (Doc. 12-1, p. 3.) First, Lawson and Cartwright state that many of the removal statutes, Section 1441, *et seq.,* do not apply and do not provide a basis for removal. (<u>Id.</u> at pp. 4–7.) Lawson and Cartwright also assert that Thomas does not present a federal question under Section 1331, and he does not satisfy the amount in controversy requirement under Section 1332. (<u>Id.</u> at pp. 8–9.) In addition, Lawson and Cartwright allege the Indian Child Welfare Act, 25 U.S.C. § 1901, *et seq.*, does not apply to confer jurisdiction upon this Court. (<u>Id.</u> at pp. 9–13.) Thomas responds that Lawson and Cartwright have "intentionally and in bad faith" filed their Motion for Remand and cited to inapplicable, unpublished case law and misstatement of facts in an effort to "mislead" this Court. (Doc. 21, p. 1.)

The Court agrees this cause of action was removed from the Lake County, Ohio Court of Common Pleas' jurisdiction improperly. Lawson's and Cartwright's Motion requires analysis under many statutes and applicable case law, which the Court addresses in turn.

**I.      Legal Standard for Removal**

A defendant may remove a case from state court to federal court if the federal court had jurisdiction to hear the case originally. 28 U.S.C. § 1331 ("[A] district court has subject matter jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."); <u>see also</u> 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant

or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). "Given that removal jurisdiction raises significant federalism concerns, 'federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.'" Miller v. Holmes, No. CV 215-46, 2015 WL 6408119, at *2 (S.D. Ga. Oct. 23, 2015) (quoting City of Vestavia Hills v. Gen. Fidelity Ins. Co., 676 F.3d 1310, 1313 (11th Cir. 2012) (quoting Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999)). "The removing party 'bear[s] the burden of demonstrating federal jurisdiction.'" Id. (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 n.4 (11th Cir. 1998)).

**II.    Whether Thomas has Asserted a Proper Basis for Removal Pursuant to 28 U.S.C. § 1441, *et seq.***

Lawson and Cartwright assert Sections 1441 through 1452 of Title 28 of the United States Code do not provide any basis for removal of the Lake County, Ohio, child custody case. Lawson and Cartwright contend Sections 1442, 1442a, 1444, and 1452 do not apply, as these Sections concern removal: when federal officers or agencies are sued or prosecuted; when members of the armed forces are sued or prosecuted; of foreclosure actions against the United States; and of bankruptcy cases, respectively. Because Thomas' Notice of Removal concerns a cause of action involving the custody of a minor child, Lawson and Cartwright posit these statutes do not provide bases for removal to this Court. Likewise, Lawson and Cartwright aver Sections 1443 and 1441 do not authorize removal.

**A.    Sections 1442, 1442a, 1444, and 1452**

Sections 1442, 1442a, 1444, and 1452 of Title 28 of the United States Code authorize the removal of actions commenced in state courts concerning: civil and criminal suits against federal officers or agencies and members of the armed services, (Sections 1442 and 1442a); foreclosure

or other real property actions involving the United States, (Section 1444); and bankruptcy proceedings, (Section 1452). Lawson and Cartwright are correct that these four Code Sections of Title 28 do not authorize the removal to this Court of a child custody case arising in Lake County, Ohio.[2] Thus, these statutes do not provide a basis for removal of a state court action to this Court.

**B.    Section 1443**

Lawson and Cartwright contend a two-pronged test must be satisfied for removal under Section 1443. First, a petitioner must show the deprivation of a right that arises under federal law providing for specific civil rights stated in terms of racial equality. In addition, the deprivation must be manifest in a formal expression of state law. (Doc. 12-1, pp. 4–5.) Lawson and Cartwright aver persuasive authority holds removal under the Indian Child Welfare Act ("ICWA") is improper. Additionally, Lawson and Cartwright state the ICWA is not a federal law providing for specific civil rights stated in terms of racial inequality, as the purpose of the ICWA is "'to promote stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families.'" (Id. at p. 5) (quoting Miller v. Bunn-Miller, No. SACV 11-1465-JST (ANx), 2011 WL 4529996 (C.D. Cal. Sept. 27, 2011).). Lawson and Cartwright contend that Thomas' assertion of rights under the ICWA, even if applicable, is insufficient to justify removal of this Lake County, Ohio, cause of action to this Court.

The defendant in any civil or criminal action commenced in a State court against "any person who is denied or cannot enforce in the court of such State a right under any law providing

[2]  Though not specifically enumerated by Lawson and Cartwright as failing to form a basis for removal, 28 U.S.C. §§ 1445 through 1451 are not applicable and provide no basis for removal. These particular Sections pertain to actions which are nonremovable, the procedures to employ for removal, and definitions used in the removal statutes.

for the equal civil rights of citizens of the United States," or for "any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law[,]" may remove such a case "to the district court of the United States for the district and division embracing the place wherein [such an action] is pending[.]" 28 U.S.C. § 1443. Even assuming the ICWA provides a jurisdictional basis for removal to a federal district court[3], Section 1443 contains a geographical component which requires that Thomas move for removal of the pending child custody proceedings in the United States District Court for the Northern District of Ohio, Eastern Division, and not in this Court's Waycross Division. Thus, Section 1443 does not allow for removal of the Lake County, Ohio, child custody proceedings to this Court.

**C.    Section 1441**

Lawson and Cartwright state Section 1441 authorizes removal of actions over which district courts have original jurisdiction, those based on diversity of citizenship under 28 U.S.C. § 1332, and those involving a federal question under 28 U.S.C. §1331. According to Lawson and Cartwright, neither of these provisions authorizes removal in this case, and, even if these provisions did, Thomas' efforts at removal would fail. Importantly, Lawson and Cartwright explain that removal is authorized only to the district court of the United States for the district and division embracing the place where such action is pending. Thus, even if removal were proper, it would have to be to the United States District Court for the Northern District of Ohio, in which Lake County, Ohio, is located, not in the Waycross Division of this Court.

The federal statute governing the removal of cases from state court provides in relevant part:

---

[3] The applicability of the ICWA to the child custody case presently before the Court will be addressed in Section V of this Report, *infra.*

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, *may be removed by the defendant or the defendants*, to the district court of the United States *for the district and division embracing the place where such action is pending.*

28 U.S.C. § 1441(a) (emphases added).  The State child custody proceeding Thomas seeks to remove is currently pending in Lake County, Ohio.  (Doc. 1.)  Accordingly, if Thomas wishes to remove that action to federal court, the geographical component of Section 1441(a) requires that he do so in the United States District Court for the Northern District of Ohio, Eastern Division, just as Section 1443 does.  See Peterson v. BMI Refractories, 124 F.3d 1386 (11th Cir. 1997).[4]  As a result, Section 1441 does not allow for removal of the Ohio child custody proceedings to this Court.

## III.   Whether Section 1331 Provides a Basis for Removal

Lawson and Cartwright contend DiSanto seeks relief in the Lake County, Ohio, cause of action which does not depend on resolution of a question arising under the United States Constitution, treaties, or federal law, and thus, Section 1331 does not authorize removal.

District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "To determine whether a claim arises under federal law, courts apply the well-pleaded complaint rule, 'which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  Miller, No. CV 215-46, 2015 WL 6408119, at *2 (quoting Smith v. GTE Corp., 236 F.3d 1292, 1310 (11th Cir. 2001) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).  "Federal question jurisdiction will be found where a 'well-

---

[4] Peterson held that a "failure to comply with the geographical requirements of § 1441(a) is a procedural defect that does not deprive a district court of subject matter jurisdiction in a *removed* case."  124 F.3d at 1394 (emphasis added).  This is not a "removed case" (where a defendant has taken the proper steps to secure removal) but rather involves a petition requesting leave of this Court to allow removal of the Ohio case.  (Doc. 1.)

pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  Id. (quoting Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1472 (11th Cir. 1997)).

Thomas seeks to establish a question of federal law for purposes of Section 1331 by citing 42 U.S.C. §§ 1983 and 1985 in support of his contention that DiSanto, Lawson, Cartwright, the State of Ohio, and DeWine conspired to violate the minor child's rights to "Liberty and Equal Protection Due Process of Law [sic] [.]"[5]  (Doc. 1, p. 9.)  However, Thomas fails to present any evidence or factual allegations in support of such specious contentions.

A conspiracy to violate another person's constitutional rights violates Section 1983.  In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States."  Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law."  Id.

"To establish a prima facie case of [a S]ection 1983 conspiracy, a plaintiff must show, among other things, that defendants "'reached an understanding to violate [his] rights.'"  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2007) (quoting Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988)).  A "plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show some evidence of agreement between the defendants.  Id. at 1283–84 (quoting Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990)).  "[T]he linchpin for conspiracy is agreement."

_____

[5]  The ICWA can establish a federal question for Section 1331 purposes.  See Doe v. Mann, 415 F.3d 1038 (9th Cir. 2005).  However, as discussed infra., the ICWA is inapplicable here, and thus, does not provide a basis for removal under Section 1331.

*Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). "[M]erely string[ing] together" alleged acts of individuals is not sufficient to establish the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Likewise, "[t]o state a claim under [42 U.S.C.] § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States." *Gibbs v. United States*, 517 F. App'x 664, 669 (11th Cir. 2013) (citing *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996)). "The language of Section 1985 which requires an intent to deprive one of equal protection or equal privileges and immunities means that there must be some racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Byrd v. Clark*, 783 F.2d 1002, 1007–08 (11th Cir. 1986), *abrogated on other grounds by* Nolin v. Isbell, 207 F.3d 1253, 1256 (11th Cir. 2000).

Here, Thomas' Notice of Removal is completely lacking in any factual allegations that DiSanto, Lawson, Cartwright, the State of Ohio, and DeWine reached an agreement to or intended to conspire against Thomas or the minor child. Instead, he merely states these individuals should be held liable for "conspiring" to violate the minor child's rights. (*See, e.g.*, Doc. 1, p. 9.) In addition, there is nothing before the Court indicating that these individuals acted with a discriminatory animus. There is a lack of indicia for liability under Sections 1983 and 1985 as a jurisdictional basis for removal in this case within the meaning of Section 1331.

Accordingly, Thomas fails to present a "federal question" pursuant to Section 1331 to authorize removal of the Ohio child custody proceedings to this Court.[6]

## IV.  Whether Section 1332 Provides a Basis for Removal

Lawson and Cartwright maintain Section 1332 does not justify the exercise of removal jurisdiction, as there is no evidence of an amount in controversy. Thomas responds he is seeking $100,000 in recovery, so he meets the threshold amount under Section 1332. Lawson and Cartwright assert Ohio is the minor child's "home state", which allows Ohio to exercise jurisdiction over questions pertaining to his custody.

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" "citizens of different States." 28 U.S.C. § 1332(a)(1). "However, federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." <u>Id.</u>

At first blush, it appears that Thomas' desire to recover $100,000 satisfies the amount in controversy requirement of Section 1332 and that the parties have diversity of citizenship. However, even if this Court had jurisdiction to address the merits of this case, it should abstain from doing so under the <u>Younger</u> abstention rule. <u>Younger v. Harris</u>, 401 U.S. 37 (1971); <u>31 Foster Children v. Bush</u>, 329 F.3d 1255, 1274 (11th Cir. 2003) ("Although <u>Younger</u> concerned state criminal proceedings, its principles are 'fully applicable to noncriminal judicial proceedings

---

[6]  Moreover, as described below, this Court must abstain from intervening in a pending state court custody proceeding under the <u>Younger</u> abstention doctrine and lacks jurisdiction to review a state court child custody judgment under the <u>Rooker-Feldman</u> doctrine.

when important state interests are involved.'"). The <u>Younger</u> abstention doctrine reflects "a strong federal policy against federal[ ] court interference with pending state judicial proceedings absent extraordinary circumstances." <u>Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982). "This 'settled law,' intended to preserve the independence of our concurrent judicial systems, requires 'sensitive consideration of ongoing proceedings in state courts' and 'that a federal court "tread lightly" when a state proceeding is already underway.'" <u>Stephens v. Sluss</u>, No. CV407-089, 2007 WL 2106225, at *2–3 (S.D. Ga. Aug. 15, 2007) (quoting <u>The News-Journal Corp. v. Foxman</u>, 939 F.2d 1499, 1508 (11th Cir. 1991) (quoting <u>Blalock v. United States</u>, 844 F.2d 1546, 1549 (11th Cir. 1988)); <u>see</u> <u>Adams v. Fla.</u>, 185 F. App'x 816, 817 (11th Cir. 2006) (affirming the dismissal of a 42 U.S.C. § 1983 complaint seeking to enjoin a civil contempt finding in child support enforcement case under the <u>Younger</u> doctrine).

Where "vital state interests" are involved, a federal court should abstain from hearing a case "unless state law clearly bars the interposition of the constitutional claim." <u>Middlesex Cty. Ethics Comm.</u>, 457 U.S. at 432 (quoting <u>Moore v. Sims</u>, 442 U.S. 415, 426 (1979)). To determine whether <u>Younger</u> requires abstention in a given case, a federal court must ask three questions: "first, do the proceedings constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." <u>31 Foster Children</u>, 329 F.3d at 1274 (quoting <u>Middlesex Cty.</u>, 457 U.S. at 432). If the answer to all three questions is "yes," then a federal court must abstain from hearing a case in order to avoid interfering with the ongoing state-court proceedings.

"The federal judiciary has traditionally abstained from deciding cases concerning domestic relations. As a result, federal courts generally dismiss cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." Ingram v. Hayes, 866 F.2d 368, 369 (11th Cir. 1988) (citations omitted) (holding that, although diversity of citizenship existed, the district court properly abstained from exercising jurisdiction in domestic relations case). "However, the domestic relations exception does not justify abstention in all diversity cases involving intra-family disputes." Moussignac v. Ga. Dep't of Human Res., 139 F. App'x 161, 162 (11th Cir. 2005). Federal courts should not abstain when the following policies favoring federal abstention are absent: "the strong state interest in domestic relations matters, the competency of state courts in settling family disputes, the possibility of incompatible federal and state decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." Id. (citing Kirby v Mellenger, 830 F.2d 176, 178 (11th Cir. 1987), and Crouch v. Crouch, 566 F.2d 486, 487 (5th Cir. 1978)). "Consequently, federal courts should dismiss the action only if hearing the claim would mandate inquiry into the marital or parent-child relationship." Ingram, 866 F.2d at 370 (citing Jagiella v. Jagiella, 647 F.2d 561, 565 (5th Cir. 1981)).

Removal of this case would undoubtedly require this Court to inquire into a parent-child relationship. DiSanto sought the assistance of the Lake County DJFS in determining the paternity of her minor child. Thomas, the putative father of this minor child, refused to comply with the directive to submit to genetic testing. DiSanto then filed a complaint in the Lake County Court of Common Pleas, seeking emergency, ex parte custody of the minor child. (Doc. 1-1, pp. 9–10.) According to the pleadings before the Court, DiSanto and the minor child

have lived in Ohio for nearly three years' time, and the State of Ohio has a strong interest in resolving this dispute involving two of its residents. Further, there is nothing before the Court suggesting the State of Ohio is incapable of determining the merits of this case. As the facts before the Court indicate abstention is appropriate, removal would be improper under Section 1332.[7]

---

[7] Even if the Ohio court had entered a judgment and the state action were not still pending, the Court would lack jurisdiction to hear this case. Pursuant to the Rooker-Feldman doctrine, the Court is without jurisdiction over claims which essentially seek review of a state-court judgment. "The Rooker-Feldman doctrine derives from Rooker v. Fidelity Trust Company, 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and provides that, as a general matter, federal district courts lack jurisdiction to review a final state court decision." McCorvey v. Weaver, 620 F. App'x 881, 882 (11th Cir. 2015). Nor under the Rooker-Feldman doctrine may a federal court "decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment." Datz v. Kilgore, 51 F.3d 252, 253 (11th Cir. 1995) (quoting Staley v. Ledbetter, 837 F.2d 1016, 1018 (11th Cir. 1988)). "Rooker-Feldman applies because, among the federal courts, Congress authorized only the Supreme Court to reverse or modify a state court decision." Helton v. Ramsay, 566 F. App'x 876, 877 (11th Cir. 2014) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Put succinctly, this Court is not an appeals court to which a losing or disgruntled state court party can appeal an unfavorable decision. This Court and other federal courts frequently find that the Rooker-Feldman doctrine prevents federal courts from hearing claims based on a state court's custody determination or parental rights termination. See, e.g., Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1334 (11th Cir. 2001) (finding that the Rooker-Feldman doctrine barred jurisdiction over the plaintiffs' due process claims against state officials because the success of those claims would require finding that the state court wrongly decided to terminate the plaintiffs' parental rights and wrongly denied their petition for return of custody); Taylor v. Randolph, 594 F. App'x 578 (11th Cir. 2014) (Rooker-Feldman doctrine barred mother's claims against state court judges and employees of sheriff's office and child protection agency, alleging that defendants' decisions in child-custody proceedings and child well-being matters violated her and her child's fundamental rights); Plunkett v. Rountree, No. CV214-015, 2015 WL 1505970, at *12 (S.D. Ga. Mar. 31, 2015) (dismissing claims based on juvenile court's removal of plaintiff's children, the litigation in juvenile court, or the treatment of her children in foster care); Daw v. Cowan, No. 3:11CV96/RV/EMT, 2013 WL 5838683, at *5 (N.D. Fla. Oct. 30, 2013) ("[T]o the extent Plaintiff seeks review of any final judgments issued by the state court, including those that terminated her parental rights, this court lacks jurisdiction over the matter."). Further, the Eleventh Circuit has "also determined those officers and other government personnel acting pursuant to, or in concert with, child-custody or child well-being proceedings fall within the Rooker-Feldman doctrine because their acts are inextricably intertwined with state court judgments." Taylor, 594 F. App'x at 580 (citing Goodman, 259 F.3d at 1334.)

## V.  Whether the ICWA, 25 U.S.C. § 1901, *et seq.*, Applies and Provides a Basis for Removal

Lawson and Cartwright contend the ICWA is not applicable in this case.[8]  First, Lawson and Cartwright state Thomas does not allege the minor child is of Native American descent on his mother's side, and Thomas denies paternity of the minor child.  They assert the ICWA defines "parent" as having a biological connection to the Indian child and expressly excludes the unwed father where paternity has not been acknowledged or established.  Lawson and Cartwright also assert that, even if Thomas established paternity, the ICWA is inapplicable because the tribe which Thomas claims to be a member of is not a federally recognized Native American tribe.  Further, Lawson and Cartwright allege the ICWA does not apply to cases involving custody disputes between parents.  Finally, Lawson and Cartwright assert the ICWA does not confer jurisdiction on federal courts.[9]

### A.  Paternity

Under the ICWA, a "parent" is defined as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom.  It does not include the unwed father where paternity has not been acknowledged or established[.]"  28 U.S.C. § 1903(9).  An "Indian child" is defined under this Act as any unmarried person who is under age eighteen and is either (a) a member of an Indian

---

[8]  The policy behind the passage of the ICWA is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs."  25 U.S.C. § 1902.

[9]  Although Thomas responded to Lawson's and Cartwright's Motion for Remand, he did not do so in a meaningful way.  Specifically, in "response" to the assertion that the ICWA is not applicable, Thomas does nothing more than recite provisions of the ICWA.  He does not allege how these provisions apply to the case *sub judice* or how Lawson's and Cartwright's assertions are erroneous.

tribe or (b) is eligible for membership in an Indian tribe <u>and</u> is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4) (emphasis supplied).

Here, Thomas has failed to establish his paternity of the minor child, and he cannot claim to be the minor child's parent, as defined in the ICWA, as he and DiSanto never married. The Court notes Thomas' submission of an Identification Certificate purporting to indicate that the minor child is a registered member of the Pembina Nation Little Shell Band of North America. (Doc. 21-1, pp. 8–10.) Nevertheless, there is nothing before the Court indicating that, even if the minor child is a member of the "Pembina Nation"[10], that his membership is based on his mother—his one confirmed parent—as being a member of the "Pembina Nation." In addition, even if the minor child is a member of the Pembina Nation, as noted in the following subsection of this Report, it does not appear that the Pembina Nation is a federally-recognized Indian tribe.

### B. Federally Recognized Tribes

"'Indian tribe' means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians[.]" 25 U.S.C. § 1903(8). "The term 'Indian'. . . shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood." 25 U.S.C. § 479. The Secretary of the Interior "shall publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 479a-1(a). This list is to be published

---

[10] Thomas consistently refers to the "Penbina Nation" as the Indian tribe of which he is a member. The submitted paperwork lists the "Pembina Nation", and that is the nomenclature the Court uses in its discussion.

every year on or before January 30. 25 U.S.C. § 479a-1(b). Neither the Pembina (nor the Penbina) Nation Little Shell Band of North America is listed among the "566 tribal entities recognized and eligible for funding and services from the Bureau of Indian Affairs" (an agency within the Department of the Interior) "by virtue of their status as Indian tribes[.]" Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 80 Fed. Reg. 1942-02 (Jan. 14, 2015).

"[T]he unanimous authority of the federal courts appears to affirm that the Pembina Nation Little Shell Band of North America is not federally recognized[ ]" as an "Indian tribe under the ICWA." Neal v. Ariz., No. CV-09-8203-PCT-JAT, 2010 WL 231552, at *2 (D. Ariz. Jan. 14, 2010), aff'd, 436 F. App'x 811 (9th Cir. 2011) (citing Reed v. U.S. Bank Nat. Assoc., 212 F. App'x 707, 708 (9th Cir. 2006) ("The district court did not abuse its discretion in declining to recognize the Pembina court judgment because the Pembina Nation Little Shell Band is not a federally recognized tribe[.]"); Mulder v. Lundberg, 154 F. App'x 52, 55 (10th Cir. 2005) (noting that "the Bureau of Indian Affairs does not recognize [Pembina Nation Little Shell Band of North America] or its courts."); Delorme v. United States, 354 F.3d 810, 814 n.6 (8th Cir. 2004) ("The Little Shell Band of Chippewa Indians of North Dakota (also known as the Little Shell Pembina Band of North America) is a federally unrecognized band[.]"); United States v. White, No. 07-00395-01-CR-W-HFS, 2008 WL 4816987, at *3 (W.D. Mo. Oct. 31, 2008) ("The unanimous authority of the federal court has found that the Pembina Nation is not a federally recognized tribe. As such, the Pembina Nation has no recognized authority to issue license plates for motor vehicles traveling in the state of Missouri.") (citations omitted); United States v. Stowbunenko–Saitschenko, No. CR 06-0869-PHX-DGC, 2007 WL 865392, at *1 (D. Ariz. Mar. 20, 2007) ("The [Pembina Nation Little Shell Band of North America] has not been

formally recognized by the United States."); <u>Richmond v. Wampanoag Tribal Court Cases</u>, 431

F. Supp. 2d 1159, 1167–69 (D. Utah 2006) (stating that Pembina Nation Little Shell Band is not

a federally recognized Indian tribe)); <u>see also</u> 74 Fed. Reg. 40218–02 (Aug. 11, 2009) (the

Bureau of Indian Affairs' publication listing "Indian Entities Recognized and Eligible To

Receive Services From the United States Bureau of Indian Affairs," which lists over 560 such

tribes, none of which are the Little Shell Band).

  As the Pembina Nation Little Shell Band of North America is not recognized as eligible

for services by the Department of Interior's Bureau of Indian Affairs, any member of this group

of people is not entitled to use of the ICWA.  Thus, to the extent Thomas claims membership to

this group of people, he cannot invoke the ICWA as a basis for removal to this Court.

  **C.**  **Custody Dispute Between Parents**

  Under the ICWA, a "child custody proceeding shall mean and include" foster care

placement, termination of parental rights, preadoptive placement, and adoptive placement.  25

U.S.C. § 1903(1).  This definition does not include paternity or custody issues, as at issue in this

case.  Thus, even if Thomas were eligible to use the ICWA as a member of a recognized tribe

under this Act, he could not invoke the ICWA as a jurisdictional basis in this case to justify

removal to this Court.  <u>See</u> <u>Comanche Indian Tribe of Okla. v. Hovis</u>, 53 F.3d 298, 302 (10th

Cir. 1995) (recognizing the definition of "child custody proceedings" under the ICWA and

noting that this term does not include "placement based upon . . . an award, in a divorce

proceeding, of custody of one of the parents."); <u>Oglala Sioux Tribe v. Van Hunnik</u>, 100 F. Supp.

3d 749, 755 (D.S.D. 2015) ("The Indian Child Welfare Act . . . was the product of rising concern

in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of

abusive child welfare practices that resulted in the separation of large numbers of Indian children

from their families and tribes through adoption or foster care placement, usually in non-Indian homes.") (quoting <u>Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 32 (1989)).

The issues of the minor child's paternity and resulting custody concerns are at stake in this cause of action. By definition, such matters are excluded from the definition of child custody proceedings under the ICWA. Accordingly, Thomas cannot remove the proceedings to this Court pursuant to the ICWA, even if he were eligible to proceed under this Act.

**D.     Whether the ICWA Confers Jurisdiction on this Court**

"An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C. § 1911(a). "The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity." 25 U.S.C. § 1911(d).

As noted above, the Pembina Nation is not a recognized Indian tribe under the ICWA. In addition, there is no evidence before the Court that the minor child, who may not be of Indian descent, resides in or is domiciled within the reservation of the Pembina Nation (if such were recognized as an Indian tribe under the ICWA). There is no basis of removal under the ICWA, and this Court is without jurisdiction to entertain the relative merits of the allegations in this case.

**CONCLUSION**

Based on the numerous foregoing reasons, I **RECOMMEND** the Court **GRANT** Lawson's and Cartwright's Motion for Remand, (doc. 12), **DENY** Thomas' Motion for Notice of Removal, (doc. 1), **REMAND** this case to the Court of Common Pleas in Lake County, Ohio, and **CLOSE** this case in this Court.[11] I also **RECOMMEND** the Court **DISMISS** Thomas' Motions for Default Judgment, Motions to Amend/Correct, Motions to Strike, and Motion for Immediate Consideration, (docs. 13, 17, 20, 22, 24, 26, 27, 30), as moot.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

---

[11] Although Lawson and Cartwright are the only Plaintiff-Respondents who moved for remand, the entirety of this case should be remanded to avoid piecemeal litigation and the unnecessary use of further judicial resources.

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 2nd day of February, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA